IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAWARE VALLEY AESTHETICS, PLLC d/b/a RUMER COSMETIC SURGERY, *et al.* | : : : | CIVIL ACTION |
| *Plaintiffs*, | : : | |
| | : | NO. 20-0456 |
| v. | : : : | |
| JOHN DOE 1, *Defendant*. | : : | |

**MEMORANDUM**

**KENNEY, J.**                                                                              **November 21, 2022**

Plaintiffs Delaware Valley Aesthetics, PLLC, d/b/a Rumer Cosmetic Surgery ("Rumer Cosmetic") and Plaintiff Dr. Kathy Rumer's ("Dr. Rumer") assert four causes of action against Defendant John Doe:[1] libel *per se* (Count I), commercial disparagement (Count II), intentional interference with business relationships (Count III), and invasion of privacy: public disclosure of private fact (Count IV). ECF No. 46 ¶¶ 15–37. Plaintiffs allege that a blog titled "Kathy Rumer's Anonymous" ("Blog") contained false and damaging attacks on Dr. Rumer's "surgical practice, reputation, medical skills, professionalism, and personal character." *Id*. ¶ 12.

This matter comes before the Court on Plaintiffs' Motion to Enter Default Judgment Against John Doe. ECF No. 80. Plaintiffs properly served John Doe throughout the pendency of the case, including *via* email, but John Doe has not appeared or otherwise responded to any filings. The Clerk of Court entered default on January 14, 2022, and Plaintiffs now request default judgment. *Id.* The Court held an Evidentiary Hearing on October 4, 2022 to determine

---

[1] The Court refers to the defendants as John Doe and Jane Doe to pseudonymize the individuals. The pseudonyms are not a reflection of or statement of the Court regarding the defendants' genders.

1

whether and to what extent default judgment and monetary damages and injunctive relief are appropriate. ECF No. 81. For the reasons set forth below, the Court will enter default judgment and award $169,214.44 in compensatory damages and $5,000 in punitive damages. The Court will also enjoin Defendants from further publishing defamatory content on the Blog.

## I. BACKGROUND[2]

Dr. Rumer is a Doctor of Osteopathic Medicine and Fellow of the American College of Osteopathic Surgeons who practices medicine at Rumer Cosmetic. ECF No. 46 ¶¶ 2, 6–7. Rumer Cosmetic is a surgical practice located in Ardmore, Pennsylvania that derives most of its annual income from gender reassignment surgery. *Id.* In 2019, Dr. Kathy Rumer discovered a blog titled "Kathy Rumer's Anonymous" ("Blog") published on a publicly available website (domain name "rumersanonymous.blogspot.com"). ECF No. 80 at 2. Blog posts from 2019 and prior attacked Dr. Rumer's surgical practice, reputation, medical skills, professionalism, and personal character. ECF No. 46 ¶ 12. Entries on the Blog included one entitled "Credible List of Botched Rumer Surgeries" (ECF No. 53 at 22 (Exhibit 2)) and another entitled "Cut It Off With Scissors" (*Id*. at 23 (Exhibit 2)), which alleged that Dr. Rumer had instructed a patient to perform self-surgery. *See* ECF No. 46 ¶¶ 12(c)–(f). These and other entries were published with either knowledge of their falsity or recklessness as to their veracity. *Id.* ¶ 12(g). A Blog post, dated January 2, 2019, contained Dr. Rumer's home address and a subsequent update to the post included images taken from a real estate website, purporting them to be of Dr. Rumer's home. ECF No. 53 at 14 (Exhibit 2); *see* ECF No. 46 ¶¶ 29–30.

The Blog was circulated *via* links on social media sites such as reddit.com and similar allegations appeared elsewhere on the internet. ECF No. 46 ¶ 18. Additionally, Dr. Rumer

---

[2] Because John Doe never challenged Plaintiffs' claims against them, we rely on Plaintiffs' filings to recite the relevant facts.

repeatedly received emails from "rualooker555@gmail.com," whom she believes to be John Doe, that purported to manage the Blog. *Id.* ¶ 13. Following the publication of the Blog, Plaintiffs' clients made reference to the Blog, and disparaging statements contained therein, to Dr. Rumer and her staff. *Id.* ¶ 21.

Plaintiffs maintain that the allegations published on the Blog were false and that, as a result of the Blog, they have suffered substantial monetary and non-economic harm. ECF No. 46 ¶¶ 12, 36. In order to address the false attacks and fabricated negative reviews being proliferated on the internet, Dr. Rumer hired a reputation management firm. ECF No. 87 ¶ 16. This firm launched a series of national campaigns with Google Ads in an attempt to mitigate the damage caused by John Doe's online publications. ECF No. 85 30:17–31:6. In addition to the fees paid to the firm and payments already made to Google Ads, Dr. Rumer will have significant annual expenses to maintain reputation mitigation measures for the foreseeable future. *Id*. 32:3–16.

## II.    PROCEDURAL HISTORY

Plaintiffs filed an initial Complaint against unknown Defendants "John Doe" and "Jane Doe" on January 23, 2020, asserting tort claims for libel *per se*, commercial disparagement, intentional interference with business relationships, and invasion of privacy. ECF No. 1. Plaintiffs were granted additional time to investigate and identify a primary defendant to establish diversity of citizenship. *See* ECF Nos. 3-8. Plaintiffs filed an Amended Complaint,

identifying Defendant Jane Doe, on December 4, 2020. ECF No. 11. The action against Jane Doe proceeded[3] while Plaintiffs attempted to discern the identity of John Doe. ECF No. 54 at 2.

Plaintiffs filed a Second Amended Complaint, identifying Defendant John Doe, on November 17, 2021. ECF No. 46. In the second Amended Complaint, Plaintiffs allege four counts against Defendant John Doe: libel *per se* (Count I), commercial disparagement (Count II), intentional interference with business relationships (Count III), and invasion of privacy: public disclosure of private fact (Count IV). *Id.* ¶¶ 15–37. Plaintiffs attempted to serve Defendant John Doe the Second Amended Complaint *via* overnight delivery to defendant's last known address. ECF No. 53 at 3, (Exhibit 3). Plaintiffs filed a Motion for Alternative Service on December 8, 2021, citing evidence that Defendant John Doe was actively evading service and requesting leave to serve *via* email. ECF No. 53. This Court found that the Plaintiffs made good faith and practical efforts to locate and serve the defendant. ECF No. 54 at 4. Email was approved as a method of service likely to be received, reasonably calculated to provide notice, and that would not prejudice the defendant. *Id*. at 4–5. The motion was subsequently granted on December 14, 2021. ECF No. 55. Summons were returned executed on December 22, 2021, Plaintiffs having served Defendant John Doe Summons and Complaint by email.[4] ECF No. 56.

Plaintiffs filed a Request for Default with included Certificate of Service (*via* email) on January 7, 2022. ECF No. 57. The Clerk of Court entered default against John Doe on January

---

[3] Defendant Jane Doe filed a Motion to Dismiss on June 1, 2021. ECF No. 19. This motion was denied on June 23, 2021. ECF No. 23. Defendant Jane Doe filed a Motion to Certify the Order denying her Motion to Dismiss for interlocutory appellate review on July 14, 2021. ECF No. 26. This motion was denied on July 20, 2021. ECF No. 30. A pretrial teleconference was held with Plaintiffs and Defendant Jane Doe on September 16, 2021. ECF No. 39. An initial teleconference regarding settlement was held before Magistrate Judge David R. Strawbridge on June 3, 2022. ECF 65. Following settlement negotiations, the action against Defendant Jane Doe was subsequently Dismissed with Prejudice on August 10, 2022. ECF No. 78.

[4] Plaintiffs identified the email address, "rumersanonymous@gmail.com," through its ongoing use to communicate with Plaintiffs' counsel and Jane Doe. ECF No. 53 at 1.

14, 2022, for failure to appear, plead, or otherwise defend. Plaintiffs filed a Motion for Entry of Default Judgment against Defendant John Doe on August 11, 2022, requesting an evidentiary hearing pursuant to Federal Rule of Civil Procedure 55(b). ECF No. 80. This motion was granted on August 23, 2022, and an Evidentiary Hearing to determine damages and any injunctive relief was scheduled for October 4, 2022. ECF No. 81. In total, Plaintiffs claim damages in excess of $300,000 "together with all applicable interest, costs, and fees." ECF No. 46 at 5-9. This amount includes compensatory damages as a well as $1 million in punitive damages. ECF No. 87 ¶¶ 24-26, 35. Plaintiffs calculate that they have spent "over $169,214.00 in professional services and advertising to mitigate the damage caused," and will continue to "spend at least $95,000 or more per year for the next 10 years." *Id*. ¶ 24. Dr. Rumer subsequently seeks "$1,119,214.00 in past and ongoing compensatory damages." *Id.* ¶ 25. Plaintiffs also seek an Order "permanently enjoining any further publication of the defamatory Blog, as well as any other available relief." ECF No. 46 at 5-9.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default judgment against a party when the Clerk of Court has entered default. First, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action." *Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) (citation omitted). Next, the Court must consider: (1) whether the defendant appears to have a litigable defense; (2) prejudice to the plaintiff if default judgment is denied; and (3) whether the defendant's delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). The Court accepts as true factual allegations made in the complaint, except those as to damages. *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005). Once default judgment has been

entered, the Court must determine whether and to what degree damages are warranted and must inquire whether the party seeking the damages has established the amount with reasonable certainty. *Bricklayers & Allied Craftworkers Local 1 v. WaterControl Servs., Inc.*, No. 09-3935, 2012 WL 3104437, at *7 (E.D. Pa. July 30, 2012); *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 628 (E.D. Pa. 1998) (noting that in tort claims "[d]amages must be proven with reasonable certainty" and that "the plaintiff must introduce sufficient facts upon which [the fact finder] can determine the amount of damages without conjecture.") (citation omitted). Injunctive relief is issued according to the principles of equity. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982). This standard is similarly applied to the uncontested facts when determining the appropriateness of injunctive relief following a default judgment. *See, e.g.*, *Mnemania, Inc. v. Forrest*, No. CV 20-5209, 2021 WL 2291321, at *4 (E.D. Pa. June 9, 2021); *Dish Network L.L.C. v. Laundrie*, No. 4:15-CV-1157, 2015 WL 7180010, at *3 (M.D. Pa. Nov. 16, 2015).

IV.     **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

If default judgment is "entered in favor of Plaintiff[s] and against [Defendant John Doe], the factual allegations in Plaintiffs' [second Amended] Complaint are taken as true, **except for allegations related to the amount of damages**." *Napold v. Parvatishver, LLC*, No. CV 17-584, 2018 WL 1089680, at *1 (W.D. Pa. Feb. 28, 2018) (emphasis added); see also *DIRECTV,* 431 F.3d at 165 n.6 ("Where a court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true'").

On October 4, 2022, Plaintiffs appeared before this Court in an evidentiary hearing with respect to damages sought. Plaintiff introduced: an expert report highlighting damage to Dr. Rumer's reputation and business (Rumer Ex. 15) and expert testimony from marketing and reputation specialist Kevin Lawrence (ECF No. 85 22:4–35:21). The Court finds that Plaintiffs'

entered, the Court must determine whether and to what degree damages are warranted and must inquire whether the party seeking the damages has established the amount with reasonable certainty. *Bricklayers & Allied Craftworkers Local 1 v. WaterControl Servs., Inc.*, No. 09-3935, 2012 WL 3104437, at *7 (E.D. Pa. July 30, 2012); *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 628 (E.D. Pa. 1998) (noting that in tort claims "[d]amages must be proven with reasonable certainty" and that "the plaintiff must introduce sufficient facts upon which [the fact finder] can determine the amount of damages without conjecture.") (citation omitted). Injunctive relief is issued according to the principles of equity. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982). This standard is similarly applied to the uncontested facts when determining the appropriateness of injunctive relief following a default judgment. *See, e.g.*, *Mnemania, Inc. v. Forrest*, No. CV 20-5209, 2021 WL 2291321, at *4 (E.D. Pa. June 9, 2021); *Dish Network L.L.C. v. Laundrie*, No. 4:15-CV-1157, 2015 WL 7180010, at *3 (M.D. Pa. Nov. 16, 2015).

IV.     **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

If default judgment is "entered in favor of Plaintiff[s] and against [Defendant John Doe], the factual allegations in Plaintiffs' [second Amended] Complaint are taken as true, **except for allegations related to the amount of damages**." *Napold v. Parvatishver, LLC*, No. CV 17-584, 2018 WL 1089680, at *1 (W.D. Pa. Feb. 28, 2018) (emphasis added); see also *DIRECTV,* 431 F.3d at 165 n.6 ("Where a court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true'").

On October 4, 2022, Plaintiffs appeared before this Court in an evidentiary hearing with respect to damages sought. Plaintiff introduced: an expert report highlighting damage to Dr. Rumer's reputation and business (Rumer Ex. 15) and expert testimony from marketing and reputation specialist Kevin Lawrence (ECF No. 85 22:4–35:21). The Court finds that Plaintiffs'

evidence is sufficient to show that they are entitled to $169,214.44 in compensatory damages and $5,000 in punitive damages. The Court further finds that injunctive relief is appropriate.

Upon consideration of the facts set forth in the Amended Complaint, the record evidence, and the evidence set forth by the Plaintiffs at the Evidentiary Hearing, the Court makes the following findings of fact and conclusions of law with respect to whether: (1) Plaintiffs have established a legitimate cause of action, *Broad. Music*, 555 F. Supp. 2d at 541 (citation omitted); (2) the defendant appears to have a litigable defense, *Chamberlain*, 210 F.3d at 164; (3) there is prejudice to the plaintiff if default judgment is denied, *id.*; (4) the defendant's delay is due to culpable conduct, *id.*; and (5) plaintiffs have established any amount of damages with reasonable certainty, *McDermott*, 11 F. Supp. 2d at 628.

### A. Findings of Fact

1. Rumer Cosmetic operates a cosmetic surgical practice located in Ardmore, Pennsylvania that specializes in gender reassignment surgery. ECF No. 46 ¶¶ 6–7.
2. Dr. Rumer is a Doctor of Osteopathic Medicine and Fellow of the American College of Osteopathic Surgeons who practices medicine at Rumer Cosmetic. *Id.* ¶ 2.
3. Rumer Cosmetic derives most of its annual income from gender reassignment surgery and attributes the success of its business to Dr. Rumer's reputation as a surgeon generally and as an expert in gender reassignment specifically. *Id.* ¶ 9.
4. Dr. Rumer met with John Doe for a consultation to discuss gender reassignment surgeries. ECF No. 85 7:8–16.
5. In the interest of providing compassionate care, Dr. Rumer made the ethically proper determination that John Doe was not psychologically prepared for surgery. *Id.*

6. Dr. Rumer never treated John Doe and had no subsequent contact after rejecting John Doe as a surgical candidate out of concern for Doe's psychological wellbeing. *Id*. 7:16–25.

7. Dr. Rumer discovered the Blog in 2019. ECF No. 46 ¶ 10.

8. The Blog featured entries that disparaged Dr. Rumer's surgical practice, reputation, medical skills, professionalism, and personal character. *Id.* ¶ 12.

9. The intended goal of the Blog was, at least in part, to diminish Dr. Rumer's reputation in the eyes of her professional peers and potential customers and cause financial loss.[5] *Id.* ¶ 11.

10. While maintaining the Blog, Defendant John Doe operated using the email address "rumersanonymous@gmail.com." *Id*. at 11 (Exhibit A).

11. Claims made in these blog posts[6] included that Dr. Rumer engaged in false advertising, that Dr. Rumer instructed a patient to engage in self-surgery, and that Dr. Rumer "botched" surgeries, among others. *See Id.* ¶¶ 12(a)-(g).

12. In or around the same time that the Blog was active, similar allegations were circulated in other online publications.[7] ECF No. 27 at 17.

13. Links to the Blog were posted to social media websites, including reddit.com. ECF No. 46 ¶ 18.

---

[5] The proffered evidence of this claim is an email from Rumers Anonymous. The email makes no mention of the blog or its intended purpose. It does contain the statement "Once her career is trash, I'm going to call her …." ECF No. 46 at 11 (Exhibit A).

[6] *See* ECF No. 53 at 22–23 (Exhibit 2). The second Amended Complaint attributes these claims to "the Website," while an email from Rumers Anonymous attributes them to "people who contact [the author of the email] with their stories," framing the blog as a forum for the anonymous statements of others -- "like an AA meeting." ECF No. 27-6. The author of this email differentiates the stories that are posted from "[their] own Rumer story which [they] sadly can't post …." *Id.*

[7] "When Surgeons Fail Their Trans Patients" (https://jezebel.com/when-surgeons-fail-their-trans-patients-1844774990), originally published 8/19/2020, updated 3/2/2022.

14. The Blog disclosed Dr. Rumer's home address and posted images of her property. *Id*. ¶¶ 12(e), 30; ECF No. 53 at 14 (Exhibit 2).

15. Dr. Rumer's personal address was never disclosed to the average patient and was not a matter of legitimate public concern. ECF No. 46 ¶¶ 32, 34.

16. On January 5, 2020, Dr. Rumer received an email from "rualooker555@gmail.com" claiming to run "the Rumer's Anonymous blog" and stating "Do you know how many submissions I get from people that you hurt? It's all going to come to light soon enough." *Id*. ¶ 13.

17. Dr. Rumer and Rumer Cosmetic received many similar emails.[8] *Id*.

18. The above referenced statements related to Dr. Rumer and Rumer Cosmetic were false. *Id.* ¶ 12.

19. The Blog has been deactivated since the initiation of the present legal action. *Id*. ¶ 14.

20. Customers of Rumer Cosmetic have referenced the Blog, or statements contained on the Blog, to Dr. Rumer and Rumer Cosmetic staff. *Id*. ¶ 21.

21. In November 2019, a prospective patient emailed Dr. Rumer's staff to cancel their scheduled surgery citing negative information that they had read online. ECF No. 85 17:13–22; *see* Rumer Ex. 28.

22. As of September 2022, Dr. Rumer expended $169,214.44[9] on national Google Ads campaigns to mitigate the damage caused by John Doe's online attacks. *Id*. 31:4–7, 21-25.

---

[8] Plaintiffs characterize these emails as threats/threatening, but the included example is uncompelling.
[9] This total includes the $86,399.44 expended by December 20, 2021 and the additional $82,815 expended from January 2022 to September 2022.

23. For the reasons set forth in more detail in the conclusions of law, this Court finds that there is a credible basis on which it can conclude that John Doe's use of the Blog resulted in $169,214.44 of financial loss for Dr. Rumer or Rumer Cosmetic.

24. For the reasons set forth in more detail in the conclusions of law, this Court finds that there is insufficient credible basis on which it can conclude that John Doe's use of the Blog will continue to result in $95,000 per year of prospective financial loss for Dr. Rumer or Rumer Cosmetic.

### B. Conclusions of Law

The Court finds that Plaintiffs have stated a legitimate cause of action on all counts, that Defendant has not demonstrated a litigable defense, that Plaintiffs would be prejudiced by a denial of default judgment, and that Defendant's conduct is culpable. The Court will therefore enter default judgment on Counts I through IV. Additionally, the Court finds that Plaintiff has established monetary damages with reasonable certainty and accordingly judgment in the amount of $174,214.44 shall be entered. The Court further finds that injunctive relief is warranted.

#### i. Plaintiffs unchallenged facts state a legitimate cause of action for all counts

The Court must first consider whether the unchallenged facts constitute legitimate causes of action. Plaintiffs allege four counts against John Doe: libel *per se* (Count I), commercial disparagement (Count II), intentional interference with business relationships (Count III), and invasion of privacy: public disclosure of private fact (Count IV). ECF No. 46 ¶¶ 15–37. The Court addresses each claim in turn.

##### a. *Libel Per Se (Count I)*

Upon consideration of the unchallenged facts alleged in the Second Amended Complaint, the testimony and evidence presented at the Evidentiary Hearing, as well as the record as a whole,

this Court finds that Plaintiffs' have stated a legitimate cause of action for libel *per se* which requires: (1) a written communication of defamatory character; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm[10] resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion[11]. 42 Pa. Cons. Stat. § 8343(a); *see* Restatement 2d of Torts, § 573 (a statement is defamatory per se as an accusation of business misconduct if it "ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession").

Considering the first five elements of *libel per se*, John Doe's knowing publication of defamatory material on the Blog, coupled with the readily understood defamatory nature and application to Dr. Rumer, satisfies these required elements. As *libel per se*, the defamatory statements are presumptively damaging, and proof of the sixth element is not required. The malice demonstrated towards Dr. Rumer and her practice through record statements of John Doe are sufficient to satisfy the seventh element. Under *DIRECTV*, the Court must accept Plaintiffs' allegations as true and finds that the Amended Complaint shows a legitimate cause of action for *libel per se*.

---

[10] The special harm requirement is eliminated if the communication imputes, among other things, business misconduct. *See NTP Marble, Inc. v. AAA Hellenic Marble, Inc.*, 799 F. Supp. 2d 446 (E.D. Pa. 2011).

[11] Occasions giving rise to a conditional privilege exist when: (1) some interest of the person who publishes defamatory matter is involved; (2) some interest of the person to whom the matter is published or some other third person is involved; or (3) a recognized interest of the public is involved. *Beckman v. Dunn,* 276 Pa.Super. 527, 419 A.2d 583 (1980). An abuse of a conditional privilege occurs when the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege or includes defamatory matter not necessary for the accomplishment of the purpose. *Id.* The fact that the publication may have been inspired, in part, by resentment or indignation at the conduct of the person defamed does not constitute abuse of the privilege if it was published in furtherance of important interests. *Id.*

b. *Commercial Disparagement (Count II)*

Upon consideration of the unchallenged facts alleged in the Second Amended Complaint, the testimony and evidence presented at the Evidentiary Hearing, as well as the record as a whole, this Court finds that Plaintiffs' have stated a legitimate cause of action for commercial disparagement which requires: (1) the publication of a false statement; (2) that the publisher either intends to cause pecuniary loss or reasonably should recognize will result in pecuniary loss; (3) resulting pecuniary loss; and (4) that the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity (actual malice). *See Pro Golf Mfg., Inc. v. Trib. Rev. Newspaper Co.*, 570 Pa. 242, 246, 809 A.2d 243, 246 (2002); *Zerpol Corp. v. DMP Corp.,* 561 F. Supp. 404, 409 (E.D. Pa. 1983); *see also* Restatement 2d of Torts, § 623A.

Considering the first three elements of commercial disparagement, John Doe's publication of false statements to the Blog, coupled with Doe's stated intention of damaging Dr. Rumer's business and the subsequent economic harms suffered by that business, satisfies these required elements. Doe's failure to investigate the truth or falsity of claims and subsequent reckless publication of those claims to the Blog satisfies the actual malice requirement of the fourth element. Under *DIRECTV*, the Court must accept Plaintiffs' allegations as true and finds that the Amended Complaint shows a legitimate cause of action for commercial disparagement.

c. *Intentional Interference with Business Relationships (Count III)*

Upon consideration of the unchallenged facts alleged in the Second Amended Complaint, the testimony and evidence presented at the Evidentiary Hearing, as well as the record as a whole, this Court finds that Plaintiffs' have stated a legitimate cause of action for intentional interference with business relationships which requires: (1) the existence of a contractual, or prospective contractual, relation between the complainant and a third party; (2) purposeful action

on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. *See Harp v. Rahme*, 984 F. Supp. 2d 398 (E.D. Pa. 2013) (citing *Pawlowski v. Smorto*, 403 Pa. Super. 71, 78, 588 A.2d 36 (1991)); *see also Behrend v. Bell Tel. Co.*, 242 Pa. Super. 47, 62, 363 A.2d 1152 (1976) (vacated on other grounds) (the tort requires "that a business relationship be proved with some degree of specificity, at least to the point that future profit be a realistic expectation and not merely wishful thinking").

Considering the first two elements of intentional interference with business relationships, John Doe's stated intentions, of harming existing doctor-patient relationships and preventing additional doctor-patient relationships from forming between Dr. Rumer and prospective surgical clients, satisfy these required elements. No evidence of privilege or justification has been proffered and the record shows that Dr. Rumer suffered cancellation of scheduled surgeries as a direct result of the Blog's publication and subsequently suffered demonstrated economic damage, satisfying the remaining elements. Under *DIRECTV*, the Court must accept Plaintiffs' allegations as true and finds that the Amended Complaint shows a legitimate cause of action for intentional interference with a business relationship.

    d. *Invasion of Privacy: Public Disclosure of Private Fact (Count IV)*

Upon consideration of the unchallenged facts alleged in the Second Amended Complaint, the testimony and evidence presented at the Evidentiary Hearing, as well as the record as a whole, this Court finds that Plaintiff Dr. Rumer has stated a legitimate cause of action for invasion of privacy which requires: (1) giving publicity; (2) to private facts; (3) of a kind highly offensive to a reasonable person; and (4) which are not of legitimate concern to the public. *See Bowley v. City*

*of Uniontown Police Dep't*, 404 F.3d 783 (3d Cir. Pa. 2005) (citing *Jenkins v. Bolla*, 411 Pa. Super. 119, 600 A.2d 1293, 1296 (1992)); *see also Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F. Supp. 2d 677, 699 (W.D. Pa. 2008) (under Pennsylvania tort law, publicity "requires that the matter be made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become public knowledge").

Considering the first two elements of invasion of privacy, John Doe's publication of the address of Dr. Rumer's private residence and pictures purporting to be of her property to the Blog satisfy these required elements. Dr. Rumer's specific efforts to prevent public disclosure of this information and John Doe's subsequent incitement of Blog readers to use the information to harass Dr. Rumer are sufficient to satisfy the third element. There being no legitimate public concern in broad publication of a doctor's residential address, the final element is satisfied. Under *DIRECTV*, the Court must accept Plaintiffs' allegations as true and finds that the Amended Complaint shows a legitimate cause of action for invasion of privacy.

### ii. John Doe has not demonstrated a litigable defense

Having found that Plaintiffs' unchallenged facts state a legitimate cause of action for all claims, the Court turns to the *Chamberlain* factors. The Court first considers whether John Doe has a litigable defense.

The litigable defense factor is a threshold issue for entry of a default judgment. *See Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003) (explaining the *Chamberlain* factors are used to determine entry of default judgment); *cf. Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (explaining the *Chamberlain* litigable defense factor is a threshold issue). There would be no purpose to set aside entry of default if a defendant could not show the possibility of winning. *See United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). Yet,

defendants cannot automatically set aside entry of default and must "allege[] specific facts beyond simple denials or conclusory statements" to permit the court to evaluate whether the defense would be a complete defense if established at trial. *Id.* A defendant does not satisfy this threshold issue when they fail to respond to the complaint. *See Hill*, 69 F. App'x at 52 ("Because the defendants had not yet filed an answer, the District Court was unable to evaluate whether they had a litigable defense; the second factor was hence inconclusive."); *Bugg v. Just Wing It, LLC*, No. 1:18-CV-02399, 2020 WL 1675953, at *5 (M.D. Pa. Apr. 6, 2020) (citing *E. Elec. Corp. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 553 (E.D. Pa. 2009)) ("Where a party completely fails to respond to the claims against it, this factor weighs in favor of granting default against the party.").

Here, John Doe's failure to answer renders the litigable defense factor either inconclusive or weighs in favor of granting default judgment. *See Hill*, 69 F. App'x at 52 (explaining the litigable defense factor was inconclusive where defendant failed to answer rendering the district court unable to evaluate the factor); *Bugg*, 2020 WL 1675953, at *5 (explaining the litigable defense factor weighed in favor of default judgment where defendant failed to answer because a defendant that fails to respond is "highly unlikely" to have a litigable defense). Even if there were affirmative defenses available to John Doe, the Court may not assert such defenses on John Doe's behalf to prevent a default judgment. *See Schwartz v. Taylor*, No. 17-cv-3799, 2021 WL 4818283, at *5 (E.D. Pa. Oct. 15, 2021) (citing *Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1109 (D.C. Cir. 2019)) (explaining a court cannot *sua sponte* raise affirmative defenses for a party that fails to appear). Considering John Doe's failure to answer, and the impermissibility of raising an affirmative defense for John Doe, the Court weighs this factor in favor of default judgment.

### iii. Plaintiffs would be prejudiced by a denial of default judgment

Plaintiffs would suffer prejudice if default judgment were denied. A plaintiff suffers prejudice of this kind when the "plaintiff's claim would be materially impaired because of the loss of evidence, an increased potential for fraud or collusion, substantial reliance on the entry of default, or other substantial factors." *Dizzley v. Friends Rehab. Program*, 202 F.R.D. 146, 147 (E.D. Pa. 2001); *see Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982) ("Realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgement entered at an early stage of the proceeding."); *see also Choice Hotels Int'l, Inc. v. Pennave Assocs.,* 192 F.R.D. 171, 174 (E.D. Pa. 2000) ("The fact that a plaintiff will have to litigate an action on the merits rather than proceed by default does not constitute prejudice.").

In the instant case, Defendant John Doe has failed to respond to proper service or appear and has offered no indication of any intention to take action that would delay, avoid, or remedy an entry of default judgement. If Plaintiffs' motion for default judgement is denied, Plaintiffs will likely be without other recourse for recovery. The Court thus concludes that the Plaintiffs would be prejudiced by a denial of default judgement.

### iv. John Doe's conduct is culpable

Culpable conduct is "presumed where a defendant fails to respond to a complaint and offers no reason for its failure to engage in the action." *Bugg*, 2020 WL 1675953, at *5 (citing *Feliciano*, 691 F.2d at 657). Here, John Doe was properly served and failed to meaningfully

respond[12] in the requisite time and manner. The Court thus concludes that John Doe's conduct was culpable.

Accordingly, the Court finds that an entry of default judgment on Counts I through IV is appropriate.

### v. Plaintiffs have established $174,214.44 of monetary damages with reasonable certainty

A plaintiff who prevails by default is not automatically entitled to the requested damages and may still be required to prove that he is entitled to the damages sought. *Rainey v. Diamond State Port Corp.*, 354 F. App'x 722, 724 (3d Cir. 2009) (citing *DIRECTV*, 431 F.3d at 165); *Star Pac. Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 231 (3d Cir. 2014) (noting "factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant for purposes of a default judgment"); *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (finding that "[a] consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true") (citation and internal quotations omitted).

When determining whether and to what degree damages are warranted, courts must inquire whether the party seeking the damages has established the amount of damages with reasonable certainty. *Bricklayers & Allied Craftworkers*, 2012 WL 3104437, at *7; *McDermott*, 11 F. Supp. 2d at 628 (noting that "[d]amages must be proven with reasonable certainty" and that "the plaintiff must introduce sufficient facts upon which [the fact finder] can determine the amount of damages without conjecture.") (citation omitted).

---

[12] An email was sent to chambers from the address rumersanonymous@gmail.com on November 2, 2022 despite repeated instructions not to email chambers. In the email, an unidentified individual refuted testimony from the evidentiary hearing and asserted an inability to pay damages. The assertions made via email, even if procedurally proper, were irrelevant to the legal elements at issue.

In conducting this inquiry, courts "ha[ve] considerable latitude in determining the amount of damages" to ensure a basis exists for the damages claimed. *Trickel v. Disc. Gold Brokers, Inc.*, No. 3:14-1916, 2016 WL 4435699, at *6 (M.D. Pa. Jan. 5, 2016). "Reasonable certainty" allows *some* uncertainty, but the amount cannot be "too speculative, vague or contingent upon some unknown factor." *PPG Indus. v. Jiangsu Tie Mao Glass Co.*, No. 2:15-cv-00965, 2021 WL 2327509, at *3 (W.D. Pa. June 8, 2021) (citing *Spector v. Fireman's Fund Ins. Co.*, 451 Fed. App'x 130, 134 (3d Cir. 2011)). In connection with its damages inquiry, courts can consider the truth of the moving party's averments by receiving evidence through detailed affidavits and other materials or conducting an evidentiary hearing. *See E. Elec. Corp.*, 657 F. Supp. 2d at 552 (citing *Durant v. Husband,* 28 F.3d 12, 15 (3d Cir. 1994) (stating that, if necessary, the court may hold a hearing to assess damages).

Plaintiffs have proven with reasonable certainty, through expert testimony and financial documentation presented at the evidentiary hearing, past damages amounting to $169,214.44. The connection between the publication of the Blog and the need for Plaintiffs to have engaged a reputation management firm is neither speculative, vague, nor contingent on unknown factors.

Plaintiffs have failed to prove with reasonable certainty ongoing damages in the amount of $95,000 per year. This amount is speculative, being based on insufficient past expenditure data, and is contingent upon the unknown factors that (1) all ongoing negative reviews are made by John Doe or are resultant from John Doe's false statements from the Blog, (2) that the reputation rehabilitation campaign will continue to require expenditures of $95,000 per year, and (3) that the reputation rehabilitation campaign will need to continue for a period of 10 years.

Plaintiffs' allegations are sufficient to support a claim for punitive damages. The standard for awarding punitive damages in a defamation case is the demonstration of actual malice. *See*

*Geyer v. Steinbronn*, 351 Pa. Super. 536, 562 (1986). Defendant's repeated statements showing ill-will and hostility towards Dr. Rumer and her surgical practice are sufficient evidence of actual malice. *See e.g.* Rumer Ex. 17. In calculating punitive damages, the Court considers "1) the character of the act, 2) the nature and extent of the harm, and 3) the wealth of the defendant." *Dolan v. Pearce*, No. 97-7519 1998 U.S. Dist. LEXIS 7182 (E.D. Pa. May 18,1998). While the harm to the reputation of Dr. Rumer and her practice is significant, the record demonstrates that John Doe is functionally destitute and lacks the resources necessary to support a substantial punitive damages award. This Court consequently finds that an award of $5,000 in punitive damages is appropriate and will serve the goals of punishment and deterrence.

### vi. Plaintiffs have established that injunctive relief is appropriate

In granting a permanent injunction, a court must find that the plaintiff has met their burden in demonstrating that "(1) it has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 388 (2006). These factors are also considered in granting a permanent injunction in a default judgment. *See, e.g.*, *Mnemania*, 2021 WL 2291321, at *4; *Dish Network*, 2015 WL 7180010, at *3.

Plaintiffs have demonstrated there has been an irreparable injury to Dr. Rumer's professional reputation as a result of the negative statements made and published by John Doe. The remedies available at law are insufficient to remedy this injury as there are ongoing negative reviews being published that reference the false allegations made by John Doe on the Blog. A grant of injunctive relief by this Court will assist Plaintiffs in being able to address ongoing negative

19

reviews making use of false statements from the Blog. *See* ECF No. 85 34:1–11. Such relief will neither burden the defendant nor violate public interest.

## V.     CONCLUSION

For the reasons stated above this Court finds that Plaintiffs have established monetary damages with reasonable certainty and accordingly judgment in the amount of $174,214.44 shall be entered. The Court further finds that injunctive relief is warranted.

**BY THE COURT:**

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**